UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

----------------------------------------------------------------x

Jane Doe One and Two,

                Plaintiffs,

       -against-

VENIAMIN GONIKMAN, ALEKSANDR
MAKSIMENKO, MIKHAIL ARONOV,
and BFC MANAGEMENT COMPANY d/b/a
ACE OF SPADES GENTLEMAN'S CLUB
f/d/b/a CHEETAH'S ON THE STRIP

                Defendants.

Case No. 13-CV-14057

Hon. Marianne O. Battani

Magistrate Paul J. Komives

----------------------------------------------------------------x

## PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYMS

Plaintiffs, by their attorneys, move the Court for permission to bring this action under the pseudonyms Jane Doe One and Jane Doe Two for the purpose of protecting their identities from public disclosure. This motion is supported by the attached brief.[1]

WHEREFORE, Plaintiffs respectfully request that the Court grant their motion to proceed under the pseudonyms Jane Doe One and Jane Doe Two and enter the proposed protective order filed with this motion as **Exhibit A**.

---

[1] Plaintiffs submit this motion prior to the filing of an appearance by defendants' counsel in this action. Plaintiffs, therefore, are unable to obtain concurrence at this time.

Respectfully submitted, this 23rd day of September, 2013.

**DYKEMA GOSSETT PLLC**

By: */s/ Thomas H. Trapnell*
    Dennis M. Haffey (P26378)
    Heidi A. Naasko (P58783)
    Janet L. Conigliaro (P72629)
    Thomas H. Trapnell (P74345)
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-6800
    dhaffey@dykema.com
    hnaasko@dykema.com
    jconigliaro@dykema.com
    ttrapnell@dykema.com

**AND**

WHITE & CASE LLP
Gregory G. Little
Danielle Audette
Rachel Feldman
Leah Rutman
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Fax: (212) 354-8113

*Attorneys for Plaintiffs Jane Doe One and Jane Doe Two*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

-----------------------------------------------------------------x

Jane Doe One and Two,

         Plaintiffs,

   -against-

VENIAMIN GONIKMAN, ALEKSANDR
MAKSIMENKO, MIKHAIL ARONOV,
and BFC MANAGEMENT COMPANY d/b/a
ACE OF SPADES GENTLEMAN'S CLUB
f/d/b/a CHEETAH'S ON THE STRIP

         Defendants.

-----------------------------------------------------------------x

Case No. _____

Hon. _____

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION TO PROCEED UNDER PSEUDONYMS

# STATEMENT OF ISSUES PRESENTED

I.  Whether the Court should enter an order permitting Plaintiffs to proceed under pseudonyms in this lawsuit, because Plaintiffs are victims of sex and labor trafficking, involuntary servitude, forced labor, and rape, and are seeking recovery from those responsible for their substantial injuries, and because Plaintiffs' privacy interests in this case substantially outweigh the presumption of open judicial proceedings, as prosecution of this suit will compel the plaintiffs to disclose information of the utmost intimacy?

      Plaintiffs answer: Yes.


II.  Whether the Court should enter an order permitting Plaintiffs to proceed under pseudonyms in this lawsuit, because permitting plaintiffs to proceed anonymously will not materially impinge upon defendants' ability to defend against this lawsuit?

      Plaintiffs answer: Yes.

## STATEMENT OF MOST APPROPRIATE AUTHORITY

In support of their Motion to Proceed under Pseudonyms, Plaintiffs rely upon *Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004); *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981); *Does v. Snyder*, No. 12-11194, 2012 WL 1344412 (E.D. Mich. Apr. 18, 2012); *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003); *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993); and the additional authorities and arguments set forth in the accompanying Brief in Support.

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ..................................................................i

STATEMENT OF MOST APPROPRIATE AUTHORITY .......................................ii

TABLE OF CONTENTS............................................................................ iii

TABLE OF AUTHORITIES ......................................................................iv

INTRODUCTION ......................................................................................1

FACTS ......................................................................................................2

      Jane Doe One ...............................................................................3

      Jane Doe Two................................................................................4

ARGUMENT ............................................................................................6

CONCLUSION........................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004) .................................................. 6, 7, 10

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ............................................................ 7

*Does v. Snyder*
    No. 12-11194, 2012 WL 1344412 (E.D. Mich. Apr. 18, 2012) ............... 6, 7, 8, 10

*EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003) ................................. 8, 9, 10

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ......................................................... 9

## STATUTES

Fed. R. Civ. P. 26(c) .................................................................................................. 7

# INTRODUCTION

Plaintiffs are the victims of sex and labor trafficking, involuntary servitude, forced labor, and rape. They came to this country with the promise of a better life, including the opportunity to obtain an education and escape poverty. Instead, plaintiffs found themselves 5,000 miles from home, held captive with no passports, visas or birth certificates, prohibited from communicating with anyone but their captors (and with limited ability to speak English), forced to work over 70 hours a week as strippers for no pay, and subject to physical, mental, and sexual abuse.

Plaintiffs, unlike many victims of human trafficking, escaped from their captivity in 2005. Plaintiffs bravely assisted in prosecuting their captors, including defendants Veniamin Gonikman, Aleksandr Maksimenko, and Mikhail Aronov. In 2007, Jane Doe One testified, using a pseudonym, before Congress in hopes her story would help prevent others from suffering the same deplorable circumstances. Throughout, plaintiffs have deliberately and cautiously concealed their true identities, shielding their families and themselves from the humiliation and painful effects of their victimization.

Plaintiffs now seek redress for the substantial harm they have incurred. To protect their privacy and safeguard their future, plaintiffs seek to proceed with this litigation under the pseudonyms Jane Doe One and Jane Doe Two. Defendants, who already know plaintiffs' true names, will not be prejudiced if plaintiffs are

permitted to conceal their identities from the public.[2] Therefore, for the reasons discussed below, plaintiffs respectfully request that the Court grants this motion to proceed under pseudonyms.

## FACTS

Plaintiffs are two young Ukrainian women, who were victims of sex and labor trafficking, involuntary servitude, forced labor and rape. Compl. at ¶ 1. Through their company Beauty Search, Inc., defendants Gonikman, Maksimenko and Aronov (hereinafter the "Beauty Search Partners") recruited, enticed and transported plaintiffs to the United States. The Beauty Search Partners then harbored and virtually enslaved plaintiffs, forcing them to work as strippers at a club owned by BFC Management Company d/b/a Ace of Spades Detroit f/d/b/a Cheetah's On The Strip (hereinafter "Cheetah's On The Strip"). *Id.* at ¶ 3. Defendants controlled plaintiffs and profited from plaintiffs' forced servitude through intimidation, confiscation of their passports and other identification documents, isolation from society, restrictions on movement, mental, physical and sexual abuse, threats of abuse, and other tools of coercion. *Id.* at ¶ 3.

---

[2] Nevertheless, plaintiffs do not object to providing their true names to the defendants, provided that the Court enters a protective order barring further dissemination of their names and requiring that any documents containing the plaintiffs' true names be filed under seal. A proposed protective ordered is submitted herewith.

2

Jane Doe One

Jane Doe One grew up in a small Ukrainian town. Her parents were engineers and she was a gymnast. *Id.* at ¶ 23. After high school, Jane Doe One searched for a job in Kiev to support herself and to pay for her schooling. *Id.* at ¶ 25. In August 2003, she responded to an ad for a waitress position at a restaurant in Kiev. *Id.* at ¶ 26. During the initial interview, defendant Gonikman told her that there were no more waitress positions available and persuaded her to become a stripper at his night club instead. *Id.* at ¶ 26. Several months later, knowing that Jane Doe One was not comfortable with her new job as a stripper, Gonikman promised her a job as a waitress at a restaurant in the United States through a student exchange program. *Id.* at ¶ 27. At the direction and with the assistance of defendants, Jane Doe One obtained a student visa and plane ticket to the United States. She flew to Washington D.C. on May 26, 2004 with the belief she would be working as a waitress in Virginia. *Id.* at ¶ 30-31.

Instead, the Beauty Search Partners, upon Jane Doe One's arrival in the United States, immediately arranged for her transportation to Detroit. *Id.* at ¶ 39. Once in Detroit, the Beauty Search Partners brought Jane Doe One to a hotel, where they confiscated all of her identification documents, including her passport, birth certificate, and visa and told her she owed them approximately $30,000 for her visa and travel expenses to the United States. *Id.* at ¶ 41. Jane Doe One was

3

told that to pay the money back she would be stripping and performing lap dances at a club, and all the money she made would have to be turned over to the Beauty Search Partners until the debt was repaid. *Id.* at ¶ 41.

The Beauty Search Partners kept Jane Doe One as a virtual prisoner for the next eight and a half months. *Id.* at ¶ 42. They forced her to work over 72 hours a week as a stripper and turn over all the money she earned. *Id.* at ¶ 47. Jane Doe One was isolated, subject to constant threats of physical abuse, not permitted to leave the apartment by herself, and prohibited from communicating with anyone but her captors. *Id.* at ¶ 52-54. Jane Doe One was routinely beaten and raped by her captors. *Id.* at ¶ 52-53. She attempted to commit suicide multiple times. *Id.* at ¶ 84.

Jane Doe Two

Gonikman and Maksimenko also recruited and enticed Jane Doe Two to travel to the United States through manipulation and coercion. *Id.* at ¶ 32. Initially, the Beauty Search Partners told Jane Doe Two that they would obtain immigration documents for her travel to the United States through a student exchange program. *Id.* at ¶ 35. After she had agreed to participate in the student exchange program, Jane Doe Two learned that her visa actually would be obtained through a fraudulent marriage arranged by Beauty Search Partners. *Id.* at ¶ 36.

Like Jane Doe One, the Beauty Search Partners arranged for Jane Doe Two's travel to the United States.

When Jane Doe Two arrived in New York, she suffered a fate similar to that of Jane Doe One. Specifically, the Beauty Search Partners brought Jane Doe Two to a hotel in Detroit and confiscated all of her identification documents, including her passport, birth certificate, and visa. *Id.* at ¶ 43. She was told that she owed the Beauty Search Partners approximately $30,000 for visa and travel expenses. *Id.* at ¶ 43. Jane Doe Two was forced to strip and provide lap dances at Cheetah's On The Strip for 12 hours a day, 72 hours a week, six days a week, month after month. *Id.* at ¶ 47. She was forced to turn over all of the money she earned to the Beauty Search Partners. *Id.* at ¶ 49. Jane Doe Two was repeatedly threatened and mentally and sexually abused *Id.* at ¶ 52. She was also forced to watch the Beauty Search Partners beat and abuse other women held captive with her. *Id.* at ¶ 68.

The Beauty Search Partners used calculated methods of intimidation that they referred to as "the System" to subdue and scare Jane Doe One and Jane Doe Two. *Id.* at ¶ 61. Defendants Aronov and Maksimenko would beat the women, intimidate them with handguns and baseball bats, and threaten to handcuff them if they did not do what they were told. If they did not earn enough money, if they did

5

not turn over all their earnings, even if they were seen talking too much to any particular customer, they were subject to "the System". *Id.* at ¶ 61.

Desperate, Jane Doe One built the courage to reveal her dire situation to one of her customers. *Id.* at ¶ 86. He agreed to help her escape. *Id.* at ¶ 87. On February 14, 2005, the customer drove a car by Jane Doe One's apartment and Jane Doe One and her roommate made a run for the car, carrying a few of their belongings in garbage bags so that Maksimenko and Aronov would think they were taking out the trash and not become suspicious. *Id.* at ¶ 89. The man drove Jane Doe One to Immigration and Customs Enforcement where she reported the enslavement and abuse to immigration officials. *Id.* at ¶ 89. Two days later, an F.B.I. swat team raided the apartment where Jane Doe Two and other women were being held. *Id.* at ¶ 90. Jane Doe Two and the other women were rescued and Maksimenko and Aronov were placed under arrest.

## ARGUMENT

The Sixth Circuit and courts in this district have recognized that, under certain circumstances, plaintiffs are excused from the general requirement that a complaint states the name of all parties. *See, e.g., Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Does v. Snyder*, No. 12-11194, 2012 WL 1344412, at *1 (E.D. Mich. Apr. 18, 2012) (recognizing that courts have "supervisory power over their own records and files, which includes the authority to enter protective orders

6

limiting access to certain documents, Fed. R. Civ. P. 26(c)") (internal citations omitted) (unpublished, **Ex B**). Anonymity is justified when a plaintiff's privacy interests substantially outweigh the presumption of open judicial proceedings. *Id.* The Sixth Circuit has identified the following factors to consider in making this determination:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Porter*, 370 F.3d at 560 (citing *Doe v. Stegall*, 653 F.2d 180, 185-86 (5th Cir. 1981)). A court may also consider whether permitting anonymity will force a defendant to proceed with insufficient information to defend against the plaintiff's claims. *Snyder*, 2012 WL 1344412 at *2.

Courts have granted anonymity based on circumstances less compelling than those at issue in this case. For example, in *Porter*, plaintiffs challenged the school board's practice of permitting the teaching of the Christian Bible as religious truth in public schools. *Porter*, 370 F.3d at 559-60. The Sixth Circuit affirmed the lower court's decision allowing plaintiffs to proceed using pseudonyms, finding that plaintiffs' interest in maintaining the privacy of their religious beliefs (and preventing potential harassment that may be incurred based on such beliefs)

justified anonymity. *Id.* at 560. In *Snyder*, the district court allowed plaintiffs, registered sex offenders, to proceed anonymously based on fear of retaliation and harassment, even though plaintiffs' status as sex offenders was published in the state's public registry. *Snyder*, 2012 WL 1344412 at *2.

In *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 109 (E.D.N.Y. 2003), plaintiff sought to recover damages as a result of contracting hepatitis B from a blood transfusion. The court found that the potential prejudice plaintiff might incur, including embarrassment and fear of stigmatization, justified allowing her to proceed anonymously. *Id.* at 112. Specifically, the court found that plaintiff had a substantial privacy concern because questions related to plaintiff's method of contracting hepatitis B would "inevitably involve issues relating to her sexual conduct of 'great intimacy.'" *Id.* (finding that "in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm").

Here, plaintiffs' claims necessarily will compel them to disclose intimate, sensitive, and highly personal information concerning their victimization and sexual activity. This is not simply a case where plaintiffs will be required to reveal embarrassing sexual histories; plaintiffs must disclose intimate and painful details concerning the circumstances of their human trafficking, forced labor, captivity,

8

forcible rape, and systematic abuse. There is no doubt that plaintiffs seek "to preserve privacy in a matter of sensitive and highly personal nature," rather than "merely to avoid the annoyance and criticism that may attend any litigation." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).

Plaintiffs, who have incurred substantial psychological, emotional, and physical distress as a result of defendants' conduct, seek to recover their injuries and to rebuild their lives. In this age, it is undeniable that an individual's history and personal information is easily accessible with a click of the mouse. *EW v. N.Y. Blood Ctr.*, 213 F.R.D. at 112-13 (acknowledging that the "modern invention of today includes access to court files by those surfing the Internet"). Requiring plaintiffs to proceed with this litigation under their true names will make it impossible for them to escape their horrific past – it will ensure that their families and every future employer, colleague, educator, new friend, and even their children one day will know the sordid details of their brutally painful, humiliating, and unimaginable past. Plaintiffs justifiably and deservedly seek redress for their injuries and the ability to move forward with a new life, unimpaired by the stigma (or constant reminder) of being a victim of human trafficking.

Importantly, permitting plaintiffs to protect their identities from public disclosure will not materially impinge upon defendants' ability to defend against this lawsuit. Defendants already know the identity of the plaintiffs and, to the

9

extent they claim this is not the case, plaintiffs are willing to disclose their identities to defendants pursuant to the terms of a protective order. Thus, defendants will incur no prejudice as a result of plaintiffs' use of pseudonyms. *See Porter*, 370 F.3d at 561 (where the protective order allowed counsel to know plaintiffs' names, defendants would not be hindered in their preparation for trial); *Snyder*, 2012 WL 1344412 at *2 (finding that granting plaintiffs' motion to proceed using pseudonyms would not impinge defendants' ability to defend against the lawsuit because plaintiffs were willing to disclose their names to defendants' counsel upon request); *E.W. v. N.Y. Blood Ctr.*, 213 F.R.D. at 112 (finding defendants would incur no prejudice in conducting discovery or trying the case if plaintiff proceeded using a pseudonym because defendant already knew plaintiff's name).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant their motion to proceed under the pseudonyms Jane Doe One and Jane Doe Two and enter the proposed protective order filed with this motion.

**DYKEMA GOSSETT PLLC**

By: /s/ *Thomas H. Trapnell*
    Dennis M. Haffey (P26378)
    Heidi A. Naasko (P58783)
    Janet L. Conigliaro (P72629)
    Thomas H. Trapnell (P74345)
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-6800
    dhaffey@dykema.com
    hnaasko@dykema.com
    jconigliaro@dykema.com
    ttrapnell@dykema.com

**AND**

WHITE & CASE LLP
Gregory G. Little
Danielle Audette
Rachel Feldman
Leah Rutman
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Fax: (212) 354-8113

*Attorneys for Plaintiffs Jane Doe One and Jane Doe Two*

Dated: September 23, 2013

11