IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JANE DOE ONE and TWO,

                Plaintiffs,

-against-

VENIAMIN GONIKMAN, ALEKSANDR
MAKSIMENKO, MIKHAIL ARONOV,
and BFC MANAGEMENT COMPANY d/b/a
ACE OF SPADES GENTLEMEN'S CLUB
f/d/b/a CHEETAH'S ON THE STRIP

                Defendants.

Case No. 13-cv-14057

Hon. Marianne O. Battani

---

**PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

Plaintiffs, by their attorneys, move the Court for leave to amend the complaint to include John Sands ("Sands") and Rose Talent Agency, Inc. ("Rose Talent") as additional defendants. This motion is supported by the attached brief and Declaration of Gregory G. Little, dated February 13, 2015, with the exhibits attached thereto.[1]

---

[1] Plaintiffs seek to amend their original Complaint only to add two new defendants, Sands and Rose Talent, and corresponding factual allegations concerning those defendants. Plaintiffs are not seeking to amend any of the factual allegations concerning the conduct of the four original defendants named in the Complaint, Veniamin Gonikman, Aleksandr Maksimenko, Mikhail Aronov and BFC Management Company d/b/a Ace of Spades Gentlemen's Club f/d/b/a Cheetah's On The Strip ("BFC").  As this Court is aware, Defendants Gonikman and Maksimenko have defaulted, Defendant Aronov was voluntarily dismissed and Defendant BFC has filed for Chapter 11 bankruptcy protection and thus Plaintiffs' claims against BFC are stayed and Plaintiffs are not prosecuting those claims while the automatic stay is in place.  Pursuant to Local Rule 7.1, counsel for Plaintiffs have notified counsel for the proposed new defendants, Sands and Rose Talent, of Plaintiffs' intention to file this motion and proposed amended complaint.  Counsel for Plaintiff has not received concurrence in filing this motion from counsel for proposed defendants, Sands and Rose Talent.

WHEREFORE, Plaintiffs respectfully request that the Court grant their motion to amend the complaint to add Sands and Rose Talent as defendants and enter the proposed order filed with this motion as **Exhibit A**.  A copy of the proposed Amended Complaint is attached hereto as **Exhibit B**.

Respectfully submitted, this 13th day of February, 2015.

By:   /s/ *Gregory G. Little*
WHITE & CASE LLP
Gregory Little (*pro hac vice*)
Danielle Audette (*pro hac vice*)
1155 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 819-8200
glittle@whitecase.com
daudette@whitecase.com

*Attorneys for Plaintiffs Jane Doe One and Jane Doe Two*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE ONE and TWO,

                Plaintiffs,

    -against-

VENIAMIN GONIKMAN, ALEKSANDR
MAKSIMENKO, MIKHAIL ARONOV,
and BFC MANAGEMENT COMPANY d/b/a
ACE OF SPADES GENTLEMEN'S CLUB
f/d/b/a CHEETAH'S ON THE STRIP

                Defendants.

Case No. 13-cv-14057

Hon. Marianne O. Battani

**PLAINTIFFS' BRIEF IN SUPPORT OF
THEIR MOTION TO AMEND THE COMPLAINT**

## STATEMENT OF THE ISSUE PRESENTED

Whether the Court should grant leave to Plaintiffs to amend the complaint to add Sands and Rose Talent as defendants, where such amendment will further present the real issues of the case, Plaintiffs are not guilty of bad faith or dilatory motive, Plaintiffs have not acted in bringing the amendment for purposes of delay, no defendants will suffer undue prejudice, and the trial of the issues will not be unduly delayed?

## STATEMENT OF MOST APPROPRIATE AUTHORITY

In support of their Motion to Seek Leave to Amend the Complaint, Plaintiffs rely on <u>Foman</u> v. <u>Davis</u>, 371 U.S. 178 (1962), and the additional authorities and arguments set forth in the accompanying Brief in Support.

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTS ............................................................................................................................... 3

ARGUMENT ..................................................................................................................... 5

    A.    The Federal Rules Provide a Liberal Standard for Permitting Amendment .................. 5

    B.    The Relevant Factors Support Granting Plaintiffs Leave to Amend ............................ 8

CONCLUSION ................................................................................................................ 10

Americas 90423378

# TABLE OF AUTHORITIES

## CASES

Bennet v. IRS, No. 09-cv-12352, 2010 WL 750189 (E.D. Mich. Mar. 3, 2010) ............................10

Brooks v. Clinton, No. 12-CV-12880, 2013 WL 812097 (E.D. Mich. Mar. 5, 2013)...................7, 9

Duggins v. Steak 'N Shake, Inc., 195 F.3d 828 (6th Cir. 1999)..........................................................7

Dura Operating Corp. v. Magna Int'l, No. 2:10-cv-11566, 2011 WL 1296990
(E.D. Mich. Apr. 5, 2011)..................................................................................................................6

Estes v. Ky. Utils. Co., 636 F.2d 1131 (6th Cir. 1980)........................................................................6

Foman v. Davis, 371 U.S. 178 (1962) ............................................................................................5, 6

Gen. Elec. Co. v. Sargent & Lundy, 916 F.2d 1119 (6th Cir. 1990) ..................................................7

Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479 (6th Cir. 1973)...................................................6, 9

Horacek v. Seaman, No. 08-10866, 2009 WL 2928546 (E.D. Mich. Sept. 10, 2009) ..................6, 8

Kienzle v. Gen. Motors, LLC, No. 11-11930, 2013 WL 511397 (E.D. Mich. Feb.12, 2013) ...........9

Kirk Horse Ins. v. Federal Ins. Co., No. Civ.A. 05-243-KSF, 2007 WL 98721
(E.D. Ky. Jan. 9, 2007) ......................................................................................................................7

Kujat v. Harbor Freight, Inc., No. 09-cv-14183, 2010 WL 3463928 (E.D. Mich. Aug. 30, 2010)....8

Lenhard v. CitiMortgage, Inc., No. 11-11810, 2012 WL 760918 (E.D. Mich. Mar. 8, 2012) ...........8

Moore v. Paducah, 790 F.2d 557 (6th Cir. 1986) ..............................................................................6

Phelps v. McClellan, 30 F.3d 658 (6th Cir. 1994).............................................................................7

Tucker v. Union of Needletraders, Indus., & Textile Emps., 407 F.3d 784 (6th Cir. 2005) ..............6

## STATUTES AND RULES

Trafficking Victims Protection Reauthorization Act of 2003, 22 U.S.C. § 7101...............................1

Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. §§ 1581 et seq...................1

Fed. R. Civ. P. 15...............................................................................................................................5

Fed. R. Civ. P. 21...............................................................................................................................5

Americas 90423378

## INTRODUCTION

Plaintiffs, two young Ukrainian women, are the victims of sex and labor trafficking, involuntary servitude, forced labor, and rape. The women were recruited, enticed, and transported from their hometowns in the Ukraine to the United States on the promise of better jobs and better pay. Instead, upon their arrival in the United States, they were held captive without identifying documents, isolated and prohibited from interacting with the outside world, forced to work more than seventy hours a week as strippers, robbed of their earnings, and subjected to physical, mental and sexual abuse.

On September 23, 2013, Plaintiffs filed a complaint (the "Complaint") alleging civil claims under the Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. §§ 1581 *et seq.*, and the Trafficking Victims Protection Reauthorization Act of 2003, 22 U.S.C. § 7101, against their captors, Veniamin Gonikman, Mikhail Aronov and Aleksandr Maksimenko (hereinafter the "Beauty Search Partners"), and against BFC Management Company d/b/a Ace of Spades Gentlemen's Club f/d/b/a Cheetah's On The Strip ("BFC" or "Cheetah's On The Strip"), the strip club at which the Plaintiffs were forced to work against their will.

Plaintiffs now seek to amend the Complaint to add two new defendants, Rose Talent Agency, Inc. ("Rose Talent") and John Sands ("Sands"), both of which Proposed Defendants provided substantial assistance to the Defendants' trafficking scheme alleged in the Complaint. Proposed Defendant Sands is the founder and owner of Proposed Defendant Rose Talent, an established talent recruitment business based in Detroit, that Sands has owned and operated as the principal agent for twenty years. Through Rose Talent, Sands places exotic dancers in clubs in the Detroit metropolitan area.

The identity of Sands and the existence of Rose Talent were not known to Plaintiffs at the time the Complaint was filed.  Plaintiffs first learned of the role of Sands and Rose Talent in Defendants' trafficking scheme through fact discovery in this case.  In discovery, including through a deposition of Sands, Plaintiffs learned that Sands, by and through his talent agency Rose Talent, substantially assisted in the Beauty Search Partners' scheme to obtain the forced labor and sexual services of Plaintiffs in at least three ways.  First, Sands substantially assisted in the recruitment of Plaintiffs to the United States to be exploited by the Beauty Search Partners.  Indeed, Sands traveled to the Ukraine at the Beauty Search Partners' request (and on their dime) and, while there, visited one of the Beauty Search Partners' clubs.  Sands' presence in the Ukraine and affiliation with the Beauty Search Partners lent an air of legitimacy to the Beauty Search Partners' promise that they could offer a better life to Plaintiffs by finding them legitimate, well-paying jobs in the United States.  Second, through use of his extensive knowledge of strip clubs and industry practices in the Detroit area to provide an introduction to Cheetah's On the Strip, Sands assisted the Beauty Search Partners in finding the club at which they forced Plaintiffs to dance 12 hours a day, six days a week, for months and months.  Third, Sands and Rose Talent served as Plaintiffs Jane Doe One and Two's so-called "agent" during the time that they danced at Cheetah's On The Strip.  As Plaintiffs' agent, Sands obtained dancing licenses for Plaintiffs using fraudulent identification for the women that he received from the Beauty Search Partners for the purpose of legitimizing them as licensed dancers at Cheetah's On The Strip in the event of periodic law enforcement checks of exotic dancers' licenses.

Current fact discovery in this case and Sands' deposition testimony indicates that he and Rose Talent knew or were reckless in not knowing of the trafficking scheme being carried out by the Beauty Search Partners and that Sands and Rose Talent substantially assisted in the object of

the Defendants' trafficking scheme, i.e. the forced labor and forced sexual services of Plaintiffs. Fact discovery, including Sands' testimony, also indicates that Sands and Rose Talent benefitted financially from the trafficking scheme alleged in the Complaint. Not only did Sands and Rose Talent earn a weekly fee for placing Plaintiffs as dancers with Cheetah's On The Strip, but Sands and Rose Talent maintained a multiple-year-long business relationship with the Beauty Search Partners whereby a dozen women were brought from the Ukraine and placed by Sands and Rose Talent as dancers in Detroit-area strip clubs. Accordingly, Plaintiffs bring this motion for leave to amend the Complaint to add Sands and Rose Talent as defendants.

## FACTS

Through their company Beauty Search, Inc., the Beauty Search Partners recruited, enticed and transported Plaintiffs illegally to the United States from the Ukraine. The Beauty Search Partners then harbored and virtually enslaved Plaintiffs by confiscating their passports and other identification documents, isolating them from society, restricting their movement, and subjecting them to mental, physical and sexual abuse, threats of abuse, and other tools of coercion. Complaint at ¶ 3. The Beauty Search Partners exercised complete control over the Plaintiffs and forced them to work as strippers at Cheetah's On The Strip. Id. The Plaintiffs were forced to work at Cheetah's On The Strip six days a week for twelve hours a day. Id.

During this time, Sands, by and through the company he founded and owned, Rose Talent, placed at least a dozen foreign-born women brought to the United States by the Beauty Search Partners, including Plaintiffs Jane Doe One and Two, in strip clubs in the Detroit area. Declaration of Gregory G. Little, submitted in connection herewith, Ex. A (hereinafter "Sands Dep.") at 77:18-23. Sands, as an agent for exotic dancers, was well-versed in the Detroit strip-club industry. In addition to providing an introduction to Detroit-based strip clubs for the Beauty

3

Search Partners to carry out their trafficking scheme, Sands also helped enlist Ukrainian dancers to come to the United States.  Sands Dep. at 89:15-90:13.  Around 2004-2005, the Beauty Search Partners were struggling to recruit women from the Ukraine into their trafficking scheme.  Sands took an all-expenses-paid trip to the Ukraine to persuade women there that there were legitimate employment opportunities for them in the United States.  Sands Dep. at 89:15-90:13.

      Using his knowledge of the area's strip clubs, Sands selected Cheetah's On The Strip as one of the strips clubs to which these foreign women, including Plaintiffs Jane Doe One and Two, would be sent to dance.  Sands Dep. at 64:16-65:9.  Upon Plaintiffs' forced arrival in Detroit, Sands, through Rose Talent, acted as Plaintiffs' so-called "agent."  Sands Dep. at 90:14-91:12.  As part of this job, Sands played an integral role in the trafficking scheme by obtaining the requisite dancing licenses for Plaintiffs Jane Doe One and Two using fraudulent identification documents provided to him by the Beauty Search Partners.  Sands Dep. at 69:25-71:11; 109:5-111:5.  Sands would also regularly visit the club in the evenings to check in on the dancers he had placed there.  Sands Dep. at 27:2-9.  In fact, Sands spent fifteen hours per week at Cheetah's On The Strip.  Sands Dep. at 21:21-24.  During this time, Sands was aware that the Beauty Search Partners always dropped off Plaintiffs at the club - the women never arrived to the club alone.  Sands Dep. at 81:22-82:1.  Sands was also aware that the Plaintiffs (and the other women brought to the United States by the Beauty Search Partners) were working double shifts every day, six days per week, even though very few of his other clientele worked such hours.  Sands Dep. at 74:23-75:15; 76:16-18.  Additionally, Sands knew that Plaintiffs were required to pay fees to the Beauty Search Partners to repay them for the so-called "opportunity" that the Beauty Search Partners created for Plaintiffs.  Sands Dep. at 67:15-68:10.

Sands and Rose Talent maintained a close business and social relationship with the Beauty Search Partners over a multiple-year period. Sands socialized with Defendants Maksimenko and Aronov regularly at Cheetah's On The Strip and elsewhere in Detroit, and did the same with Defendant Gonikman during Gonikman's visits to the area. Sands Dep. at 101:24-102:11; 103:23-104:6. Over the course of two years, Sands, through Rose Talent, placed a dozen women brought over from the Ukraine by the Beauty Search Partners in Detroit-area strip clubs. Sands Dep. at 98:25-99:5. In return, Sands was paid a fee for each dancer for every week the dancer was forced to dance. Sands Dep. at 72:22-73:5. In the case of Plaintiffs Jane Doe One and Two, who were forced to dance for nine and six months, respectively, this amounted to at least sixty weeks of fees for Sands and Rose Talent.

Sands and Rose Talent knew – or at the very least were reckless in not knowing – that Plaintiffs were being forced to strip at Cheetah's On The Strip against their will and that their earnings were being confiscated by the Beauty Search Partners. Sands and Rose Talent are properly defendants in this action.

## ARGUMENT

### A. The Federal Rules Provide a Liberal Standard for Permitting Amendment

Federal Rule of Civil Procedure 15 permits a party to amend a pleading after a responsive pleading has been served either by written consent of the adverse party or by leave of the court. Fed. R. Civ. P. 15(a)(2). Moreover, "the court should freely give leave [to amend] when justice so requires." Id. Similarly, Federal Rule of Civil Procedure 21 permits a plaintiff to seek leave to add a defendant "at any stage of the action and on such terms that are just." Fed. R. Civ. P. 21. As the Supreme Court has noted, the amendment rules ensure that cases are resolved on the merits. See Foman v. Davis, 371 U.S. 178, 181-82 (1962) ("The Federal Rules reject the

5

approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.") (internal citations omitted).

The decision to grant leave to amend rests within the sound discretion of the trial court. See id. at 182. In exercising such discretion, courts apply Rules 15 and 21 liberally, freely granting motions to amend. See Foman, 371 U.S. at 181-82; Tucker v. Union of Needletraders, Indus., & Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005) (Rule 15 assumes a liberal policy of permitting amendments); Dura Operating Corp. v. Magna Int'l, No. 2:10-cv-11566, 2011 WL 1296990, at *3 (E.D. Mich. Apr. 5, 2011) (noting the liberal standard of Rules 15 and 21); Horacek v. Seaman, No. 08-10866, 2009 WL 2928546, at *13 (E.D. Mich. Sept. 10, 2009) (Battani J.) (noting that "courts have shown a strong liberality in allowing amendments under Rule 15(a)."). Indeed, a court may deny leave to amend only when there is (1) undue delay, bad faith or dilatory motive on the part of the movant; (ii) continued failure to correct deficiencies by amendments previously allowed; (ii) prejudice to the opposing party; or (iv) futility of amendment. Foman, 371 U.S. at 182.

Importantly, the Sixth Circuit has noted that "delay alone is insufficient reason to deny a motion to amend" and that "the critical factors to be examined are notice and substantial prejudice." Estes v. Ky. Utils. Co., 636 F.2d 1131, 1134 (6th Cir. 1980); see also Moore v. Paducah, 790 F.2d 557, 562 (6th Cir. 1986) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."). Where a potential defendant received notice of the litigation, he is unlikely to be prejudiced by an amendment to add him as a party. Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 484 (6th Cir. 1973) (finding appellant was aware of fact situation upon which

the amended complaint was based and failed to make a showing of prejudice); accord Kirk Horse Ins. v. Federal Ins. Co., No. Civ.A. 05-243-KSF, 2007 WL 98721, at *3 (E.D. Ky. Jan. 9, 2007) (finding that proposed defendant had notice because the amended complaint arose out of same transactions described in original complaint, was provided before new defendant commenced any discovery, and defendant was on notice of any additional claims through discovery).

Other factors considered in determining whether undue delay or undue prejudice prohibit amendment include the length of the delay, how far the proceedings have progressed, whether dispositive motions have been granted, whether new allegations would require the defendant to expend significant additional resources to conduct discovery and prepare for trial, whether the new allegations would significantly delay resolution of the dispute, and whether the defendant would have conducted the defense in a substantially different manner had the amendment been made previously. See, e.g., Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (length of delay and whether dispositive motions had been filed); Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994) (whether amendment would require opponent to expend significant additional resources to conduct discovery and prepare for trial and whether delay resolution of dispute); Gen. Elec. Co. v. Sargent & Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990) (whether defense would have been conducted differently); Brooks v. Clinton, No. 12-CV-12880, 2013 WL 812097, at *2 (E.D. Mich. Mar. 5, 2013) (length of delay, discovery had been minimal, and dispositive motion cutoff and trail dates were several months away).

### B.  The Relevant Factors Support Granting Plaintiffs Leave to Amend

All of the above factors weigh in favor of granting the Plaintiffs' motion to amend the Complaint.

First, Plaintiffs have not unduly delayed in seeking leave to add Sands and Rose Talent as defendants to this action.  The Complaint was filed on September 23, 2013, and this is the first proposed amendment to Plaintiffs' Complaint.  See Lenhard v. CitiMortgage, Inc., No. 11-11810, 2012 WL 760918, at *4 (E.D. Mich. Mar. 8, 2012) (granting leave to amend because, *inter alia*, "inasmuch as this is [plaintiff's] first request to amend her complaint, there has been no failure to cure deficiencies by amendments previously allowed").  Plaintiffs were unaware of the existence of Rose Talent and the identity of Sands and the role each played in Defendants' trafficking scheme at the time the Complaint was filed.  See Horacek, 2009 WL 2928546, at *16 (Battani J.) (granting leave to amend to name new defendants whose identity was unknown when the original complaint was filed).  Only recently through fact discovery in this case did Plaintiffs uncover the facts indicating Sands' and Rose Talent's involvement in the conduct alleged in the Complaint.  Further, Plaintiffs moved within a reasonable time after learning that Sands and Rose Talent are proper defendants here to amend the Complaint.  See Kujat v. Harbor Freight, Inc., No. 09-cv-14183, 2010 WL 3463928, at *1 (E.D. Mich. Aug. 30, 2010) (finding nine months was not undue delay in seeking to amend to add a defendant, when facts giving rise to a claim against new defendant were exposed through fact discovery only two weeks before plaintiffs moved to amend).

Second, given the timely filing of this motion and the early stages of this litigation, neither Sands nor Rose Talent will be prejudiced if Plaintiffs are permitted to add them as

8

defendants.[2]  This is not a situation where the proposed amended complaint comes on the eve of trial, after discovery has been completed or dispositive motions have been granted.  Cf. Kienzle v. Gen. Motors, LLC, No. 11-11930, 2013 WL 511397, at *9 (E.D. Mich. Feb.12, 2013) (denying motion to amend complaint on eve of trial due to prejudice to defendant in having to prepare defense at that late stage, after discovery closed and after summary judgment decision).  There is no scheduling order setting a deadline for amending the pleadings, and no dispositive motions have been filed, let alone granted, in this action.  Indeed, the parties are in the initial phase of discovery, which was stayed by BFC's voluntary bankruptcy filing.  Only three depositions have been taken to date.  Brooks, 2013 WL 812097, at *2 (finding no undue prejudice where discovery "up to this point has been minimal" and motion for leave to amend was filed several months prior to dispositive motion cut-off date and scheduled trial date).  Moreover, neither Sands nor Rose Talent will be substantially prejudiced if added as defendants where Sands (and Rose Talent through its principal, Sands) were on notice of this action and the underlying facts.  Hageman, 486 F.2d at 484 (finding leave to amend was properly granted because appellant was aware of fact situation upon which the amended complaint was based and failed to make a showing of prejudice).  Indeed, Sands testified in his deposition that he was aware of the facts of the related criminal case against Defendants Gonikman, Maksimenko and Aronov which are nearly identical to those set forth in the Complaint.  Sands Dep. at 6:3-17.  Finally, Sands has been deposed in this case and is aware of and apprised of the claims at issue.

---

[2] None of the previously-named defendants will be prejudiced by this amendment.  As the Court is aware, Defendants Gonikman and Maksimenko have defaulted, Plaintiffs voluntarily dismissed the action as against Defendant Aronov, and Defendant BFC filed for bankruptcy protection and thus any proceedings against that entity are stayed.  Plaintiffs do not seek to amend any allegations as to the previously-named defendants, and thus there is no prejudice (let alone undue prejudice) to those defendants in permitting Plaintiffs to amend the Complaint.

9

Third and last, Plaintiffs are not seeking to add additional counts or theories of recovery. See Bennet v. IRS, No. 09-cv-12352, 2010 WL 750189, at *3 (E.D. Mich. Mar. 3, 2010) (permitting amendment eight months after original complaint filed when proposed amendment reformulates factual allegations but does not substantially affect theory of the case).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to amend the Complaint to add Sands and Rose Talent as party defendants and enter the proposed order filed with this motion.

Dated: February 13, 2015

      /s/ *Gregory G. Little*
WHITE & CASE LLP
Gregory Little (*pro hac vice*)
Danielle Audette (*pro hac vice*)
1155 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 819-8200
glittle@whitecase.com
daudette@whitecase.com

*Attorneys for Plaintiffs Jane Doe One and Jane Doe Two*

Americas 90423378

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of February, 2015, the undersigned filed through CM/ECF with the Clerk of the Court the foregoing Motion for Leave to Amend The Complaint with supporting Brief, Exhibits and Declaration, and I hereby request that a copy of this document be served by the Clerk's office via the Court's CM/ECF system upon all counsel of record in this case who are participants in the CM/ECF system.

BY: *Gregory G. Little* /EM

Gregory G. Little (*pro hac vice*)
New York Bar No. 4288544
1155 Avenue of the Americas
New York, NY 10036
Telephone: 212-819-8237
Facsimile: 212-354-8113
Email: gregory.little@whitecase.com

Americas 9256950